IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

PATRICIA GARRETT,                }
                                 }
     Plaintiff,                  }
                                 }      CIVIL ACTION NO.
v.                               }
                                 }      97-AR-0092-S
THE BOARD OF TRUSTEES OF THE     }
UNIVERSITY OF ALABAMA AT         }
BIRMINGHAM,                      }
                                 }
     Defendant,

**MEMORANDUM OPINION**

On January 13, 1998, exactly seven (7) years ago, this court granted summary judgment for defendant, The Board of Trustees of the University of Alabama at Birmingham ("UAB"). Plaintiff, Patricia Garrett ("Garrett"), had sued UAB, her employer, expressly invoking both the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. §§ 701, *et seq.* She claimed that UAB had violated both of these largely duplicative disability discrimination statutes. The Rehab Act and the ADA were treated by the parties and by this court as functional equivalents. Insofar as the essential elements for stating a cause of action and providing remedies, the ADA and the Rehab Act were not distinguished by the parties or by the court.

It turns out that this court missed something big on January 13, 1998. While the court was unequivocally dismissing Garrett's

action with prejudice, it failed to recognize a significant jurisdictional difference between the ADA and the Rehab Act. The court found that it lacked jurisdiction and entered final judgment against Garrett. *Garrett v. Board of Trustees of The University of Alabama*, 989 F. Supp. 1409 (N.D. Ala. 1998). Garrett filed no post-judgment motion with this court. Instead, she appealed to the Eleventh Circuit, which decided her appeal on October 26, 1999. *Garrett v. University of Alabama*, 193 F. 3d 1214 (11th Cir. 1999). This court was not privy to the briefs and arguments that led the Eleventh Circuit to its decision, but the Eleventh Circuit's opinion itself acknowledged, just as this court had done, that Garrett was relying both upon the ADA and the Rehab Act. Without distinguishing between, or discussing any difference between, the two statutes, particularly their differing jurisdictional bases, the Eleventh Circuit found that both the ADA and the Rehab Act were proper vehicles for Garrett's disability claim against UAB, her State employer. In other words, the Eleventh Circuit disagreed with this court and agreed with Garrett that she could pursue acts of alleged disparate treatment by UAB under either or both statutes. The Eleventh Circuit specifically upheld Garrett's right to proceed with a separate Rehab Act claim with the following holding:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in a Federal court for a violation of Section 504 of the Rehabilitation Act of 1973 . . . .

193 F. 3d at 1218.

Nowhere did the Eleventh Circuit discuss the alternative basis for federal jurisdiction contained in the Rehab Act, but not in the ADA, namely the waiver of Eleventh Amendment immunity that results from a State entity's voluntary acceptance of federal money.  The court speculates that Garrett did not argue, much less press upon the Eleventh Circuit, the alternative jurisdictional basis, any more than she did on this court, and instead, that she confidently put all of her eggs in the Equal Protection basket upon which Congress had based federal jurisdiction over cases brought under both statutes.  Holding that this court was in error in dismissing the case because the Congress succeeded in abrogating Eleventh Amendment immunity by virtue of the overriding influence of the Equal Protection clause, the Eleventh Circuit remanded the case to this court.

Before the remand order could be effectuated, the Supreme Court of the United States granted *certiorari* on the petition of UAB.  Again, this court was not privy to the arguments presented to the Supreme Court, but this court does know that the Supreme Court in its opinion never mentioned the alternative jurisdictional basis in the Rehab Act.  It simply reversed the Eleventh Circuit and agreed with this court. *Board of Trustees of The University of Alabama v. Garrett*, 531 U.S. 356, 121 S. Ct. 955 (2001).

On her way back down to this court, Garrett finally got around

to pointing out to the Eleventh Circuit that neither it nor this court had addressed the alternative jurisdictional basis found only in the Rehab Act.  The Eleventh Circuit thereupon asked UAB to respond to Garrett's newly found argument.  UAB responded with a classic example of lame, insipid non-advocacy, in which UAB, in effect, confessed that a horrible waste of time had taken place. UAB virtually conceded that the Rehab Act provides a basis for jurisdiction over Garrett's disability claim brought against her State employer.[1]  UAB never argued the effect of the law-of-the-case doctrine or the possibility that Garrett had waived her new argument. Instead UAB admitted that it had waived its Eleventh Amendment immunity as to possible Rehab Act liability.

The Eleventh Circuit reacted appropriately to UAB's strange response and sent the case back to this court.  When this court thereupon scheduled a hearing to explore the waiver evidence, UAB quickly admitted the obvious, namely, that it has received a super-abundance of federal dollars.  There is no State institution in

---

[1] "The district court's order and opinion which opened the way for the original appeal of this case did not address the possibility that the plaintiffs' Rehabilitation Act claims might, or might not, be the source of jurisdiction via a waiver of state immunity.  It simply was not analyzed or discussed; frankly, none of the parties presented much in the way of argument on the issue of waiver.  In view of these circumstances, the best course would be for this Court to remand in order to allow the district court to analyze the issue and, if it deems appropriate, to develop an evidentiary record."

276 F. 3d 1227, 1228 (11th Cir. 2001), quoting UAB.

4

America that is not fatally addicted to federal largess, even when it thereby risks submitting to federal court jurisdiction for any challenge of its conduct.  Thus, because the ADA and the Rehab Act have essentially the same elements for constituting a cause of action, and because both afford similar, if not identical, relief, all of the effort that had gone into litigating this case all the way to the Supreme Court suddenly became an academic exercise.  The various court opinions on Eleventh Amendment immunity did provide some excitement, and did clarify a serious jurisdictional issue for the litigating public.  But, the judicial output became meaningless for this case.  The irony is that the alternative Rehab Act jurisdictional issue escaped the attention of everybody, the parties and the courts, year after year after year.  If Garrett had filed a Rule 59 motion seeking to alter or amend this court's original judgment entered on January 13, 1998, and had pointed out to this court that it failed to address the alternative jurisdictional basis provided in the Rehab Act, the outcome might or might not have been different, but the story would certainly have been shorter.

### The New Motion for Summary Judgment

The court now has before it another UAB motion for summary judgment.  This time the motion is not based on a contention that the court lacks jurisdiction.  Rather, UAB now contends that

Garrett fails in her action brought under the Rehab Act, both upon her theory of disparate treatment and upon her claim of retaliation for having exercised some prerogative ostensibly protected by the Rehab Act.

## Disability Discrimination

Garrett was employed by UAB as a registered nurse having substantial supervisory responsibility. She was highly qualified for her job, and no one had ever suggested otherwise. She was diagnosed with breast cancer. She was thereupon granted leave to undergo treatment. She had a lumpectomy, followed by radiation and chemotherapy. She has been cancer-free for well over five years. However, during her recovery period, she could not perform every physical task precisely as she had done before her diagnosis and treatment. After treatment, she returned to work, and performed her old job without making any request for special treatment.

Long before she was declared free of cancer, UAB's decision-makers accommodated Garrett in every reasonable way, responding favorably to every request for accommodation, including a provision for sick leave. Garrett has not pointed to any accommodation that she requested that was not granted. As time passed and after Garrett had indicated that she was fatigued, UAB shared with Garrett the idea of transferring her to a less stressful and less demanding position, but without any reduction in pay. Unhappy with

the prospect of such a transfer, but without voicing any objection to it, Garrett sought out a nursing position at a nursing home owned and operated by UAB. It was only upon Garrett's express request that UAB approved Garrett's voluntary transfer to the UAB nursing home at the reduced salary that went with the new job. Seeking the open position at the nursing home was entirely Garrett's idea. The proposal of a transfer to the nursing home never came from any of Garrett's UAB supervisors. Their only participation in the transfer was to approve Garrett's purely voluntary request. Whether UAB was pleased with Garrett's decision is both unknown and irrelevant.

If Garrett's resistance to a contemplated, but never effectuated, lateral transfer, even without any loss in pay (a suggestion by UAB that preceded her self-initiated transfer to the nursing home job) amounts to a "constructive transfer" (similar to a "constructive discharge"), there are three problems that Garrett cannot overcome. First, Garrett has never pleaded the concept of "constructive transfer". Second, the court cannot locate a decision that recognizes the concept of "constructive transfer". The lexicon of adverse employment actions does not include such an action. Third, Garrett cannot be justified in not accepting a never effectuated, if suggested, transfer with no reduction in pay, and describing it as an "adverse employment action". Garrett voluntarily sought and accepted a totally different, if lesser

paid, position within the UAB complex. There was no treatment that forced her to seek the nursing home position so as to make it into an involuntary act. The fact that UAB agreed to Garrett's voluntary transfer cannot be called an adverse employment action by UAB. To use a statute designed to guarantee fair treatment for employees to mistreat an employer would be an intolerable anomaly.

If, *arguendo*, Garrett suffered an adverse employment action, the question of whether she was, in fact, "disabled" or perceived to be "disabled", as those terms are understood in the Rehab Act, must be answered. The court is not absolutely sure what "major life activity" Garrett contends that she was **substantially** limited in performing. If it was dressing herself, there is no showing that she could not perform the routine manual tasks necessary for dressing. She produced no evidence that she operated at such a reduced level that she was "substantially" limited, except for a relatively short period of time. Problems with buttons do not "substantially" interfere with the "major life activity" of dressing, much less the "major-life activity" of working, which is probably the activity Garrett is really talking about.

Everybody knows someone who either has cancer or has had cancer. The judge who is writing this opinion has had cancer. He underwent the trauma of the surgery necessary to remove a cancerous prostate gland. Another member of this court had breast cancer and a mastectomy before she was appointed to the bench. She is

presently presiding over a trial of national interest that is predicted to take four months.

Fortunately, for this judge, for his fellow judge and for Garrett, they are now cancer free. It could have gone the other way for any of them. While under treatment, they were all limited in their abilities to work and were rightfully considered to be sick. They could fairly be described as temporarily disabled. However, people do live with, and recover from, cancer, and do again function in the workplace where they worked before being diagnosed and treated for cancer. Either this judge should recuse himself because of a life experience similar to Garrett's, or he cannot avoid bringing his life experience into the decision making process. Both this judge and Garrett have recovered their abilities to perform their jobs, whether or not at the precise level of proficiency at which they performed them before their successful treatment. This judge is sure that there are lawyers who thought, or even hoped, that this judge would not come back to the bench. The perception that someone with cancer is "on the way out" may be pervasive, but in today's world it is fallacious. This judge can testify that when a person is told that he has cancer, it is psychologically, if not physically, debilitating, but not every person who has cancer is "disabled", much less "permanently disabled" and not automatically perceived to be. During treatment, a cancer patient may or may not be able to function at full

capacity, but neither does a person with a bad cold function at full capacity. Instead, that person, and those with whom he works, look forward to his recovery and to his restoration to the workplace.

The most recent helpful expressions by the Eleventh Circuit on the subject at hand are found in *Carruthers v. BSA Advertising, Inc.*, 357 F. 3d 1213 (11th Cir. 2004). Although the Eleventh Circuit was there dealing with the ADA and not with the Rehab Act, the holding applies equally to a Rehab Act case. In *Carruthers*, the Eleventh Circuit started by discussing "working" as a major life activity as follows:

> We do note that the Supreme Court more recently has expressed its reluctance to treat impairment of one's ability to work as an ADA disability. *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200, 122 S. Ct. 681, 692, 151 L. Ed. 2d 615 (2002) ("Because of the conceptual difficulties inherent in the argument that working could be a major life activity, we have been hesitant to hold as much, and we need not decide this difficult question today."). Previously, however, this circuit has, following the ADA regulations and *Sutton*'s above-quoted language, treated the activity of working as a major life activity. *See, e.g., Cash v. Smith*, 231 F. 3d 1301, 1306 (2000); *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F. 3d 907, 911-12 (11th Cir. 1996). In the absence of a more explicit directive from the Supreme Court we do not revisit that conclusion here.

357 F. 3d at 1216, n. 2.

Proceeding on the shaky assumption that "working" does constitute a major life activity, the Eleventh Circuit then held:

> In order for Carruthers to establish that BSA regarded her as substantially limited in the major life activity

10

> of working, she must show that BSA perceived her as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i); *see also Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S. Ct. 2139, 2151, 144 L. Ed. 2d 450 (1999) ("When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs."). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Thus, an impairment must preclude—or at least be perceived to preclude—an individual from more than one type of job, even if the job foreclosed is the individual's job of choice. *See Sutton*, 527 U.S. at 492, 119 S. Ct. at 2151.
>
> * * * * *
>
> We conclude that no reasonable jury could find that Carruther's evidence established that BSA perceived her impairment as one that substantially limited the major life activities of working or performing manual tasks.

*Id.* at 1216-17.

Garrett has not presented evidence that she could not perform a broad range of jobs after her course of treatment. To the contrary, she did perform a job with UAB after treatment. This court did not invent the Catch-22 that is inherent in the Rehab Act and the ADA. A person must be able to perform a job, and Garrett was able to do so.

On the undisputed facts of this case, the court concludes that Garrett was not a "qualified person with a disability", and that any perception by UAB that she was disabled was more Garrett's

11

perception than it was the perception of her employer. The mere fact that UAB knew that Garrett was under treatment for cancer does not mean that it thought of her as a permanently disabled person. The fact that Garrett has erroneously concluded that she was the victim of an adverse employment action by UAB means that the question of whether she was, in fact, a "qualified person with a disability" is unnecessary to the decision and is a collateral or secondary fact question.

### Retaliation

In opposition to Garrett's retaliation claim, UAB first argues that the Rehab Act contains no remedy for retaliatory conduct by an employer. UAB may be correct, but this court finds no compelling reason to agree with UAB. This court is willing to assume that the Rehab Act is, in all material respects, identical to the ADA and therefore recognizes a cause of action for retaliation. Nevertheless, Garrett is presented with insurmountable obstacles to her retaliation claim on the undisputed facts.

First, what is the retaliatory act of which Garrett complains? The concept of retaliation, whether under Title VII, the ADEA, the ADA or the Rehab Act, contemplates an unfavorable reaction to some statutorily protected conduct by an employee. If Garrett is complaining of UAB's refusal to provide her an accommodation, she is asking this court to overlook the undisputed fact that UAB did

provide her with every accommodation she sought. She never complained to UAB before anything happened to her that she now complains about. She cannot describe a refusal to accommodate her as a retaliatory act. Retaliation for what? What was the protected conduct that she says occasioned an adverse reaction? A refusal to provide a reasonable accommodation is an act proscribed by the Rehab Act itself. Calling it "retaliation" is a redundancy, and an illogical corruption of the Rehab Act.

Second, if Garrett is complaining about the transfer to the nursing home position as an alleged retaliatory act by UAB, she is confronted by two other undisputed material facts both of which preclude a claim of retaliation: (1) the transfer was voluntary on her part, and, in fact, was initiated by her, and thus, could not be an adverse employment action; and (2) the transfer was so lacking in temporal proximity to Garrett's last requested accommodation or any other protected activity that it provides no circumstantial evidence upon which a causal connection between any alleged protected conduct and any alleged adverse employment action could be established. In *Higdon v. Jackson*, ___ F. 3d ___, No. 03-14894 (11th Cir. Dec. 16, 2004), the court held:

> If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint or retaliation fails as a matter of law.

slip op. at 822.

In Garrett's case, there is no direct evidence whatsoever of a retaliatory motive by UAB. Without a smoking gun, Garrett must rely on close temporal proximity as a substitute, and she cannot show it. Bearing on Garrett's retaliation claim, as well as on her disparate treatment claim, the Eleventh Circuit also held in *Higdon*:

> We have explained that "an employment action . . . . is not adverse merely because the employee dislikes it or disagrees with it", and "not everything that makes that employee unhappy is an actual adverse action."

slip op. at 820-21.

Garrett obviously dislikes, disagrees with and is unhappy with what she feels was mistreatment by UAB, although the court cannot quite grasp what that mistreatment consisted of. Unhappiness is not enough upon which to base a Rehab Act claim.

### Conclusion

If UAB had refused to accommodate Garrett during her illness, or if after Garrett's return to work, UAB had, of its own motion, transferred her to a less prestigious position, Garrett arguably **might** have a meritorious Rehab Act claim, but such are not the facts here. Garrett did not wait to see what, if anything, UAB would do in response to her alleged disability. Instead, she requested and received a voluntary transfer. She cannot complain about it. Based on the actual and undisputed facts, including

14

overstated physical and mental shortcomings of a recovering cancer patient, UAB's motion for summary judgment will be granted by separate order.

DONE this 13th day of January, 2005.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE